IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FELIX GURULE,

        Plaintiff,

vs.                                                                                                                     1:22-cv-00059-LF

KILOLO KIJAKAZI,[1] Acting Commissioner
of the Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Felix Gurule's Motion to Reverse and Remand for Rehearing, with supporting memorandum (Doc. 25), filed on August 26, 2022. Mr. Gurule's motion was fully briefed on November 17, 2022. *See* Docs. 28, 31, 32. The parties consented to my entering final judgment in this case. Doc. 11. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") erred by rejecting limitations recommended in a consultative examiner's opinion without substantial evidence. I therefore GRANT Mr. Gurule's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

### I.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140

(1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.     Background and Procedural History

Felix Gurule, 34 years old, lives with his mother and pre-teen daughter in Llano, New Mexico. AR 46, 90.[4] Mr. Gurule, who has a high school education, previously worked as an internet technician, a laborer, a mechanic, and a tire technician. AR 53, 278. He filed an application for Disability Insurance Benefits ("DIB") on November 27, 2018, and an application for supplemental security income on June 27, 2019. AR 16, 78–79. In both applications, he alleged disability since September 10, 2018, due to traumatic brain injury ("TBI"), paralysis of his right side, "[p]ost jaw surgery plates," memory loss, right rotator cuff tendinopathy, and insomnia. AR 80–81. The Social Security Administration ("SSA") denied his claims initially and

---

[3] 20 C.F.R. pt. 404, subpt. P, app'x 1.

[4] Documents 15-1 through 15-9 and Document 26-1 constitute the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

on reconsideration. AR 78–111, 112–135. Mr. Gurule requested a hearing before an ALJ. AR 169–70. On June 8, 2021, ALJ Lillian Richter held a hearing telephonically, due to the COVID-19 pandemic. AR 38–77. ALJ Richter issued her unfavorable decision on August 20, 2021. AR 16–29.

The ALJ found that Mr. Gurule met the insured status requirements of the Social Security Act through September 30, 2022. AR 19. At step one, the ALJ found that Mr. Gurule had not engaged in substantial, gainful activity since September 10, 2018, his alleged onset date. *Id*. At step two, the ALJ found that Mr. Gurule's TBI, insomnia, depression, memory loss, mild neurocognitive disorder/executive function deficit, unspecific communication disorder, bipolar disorder, post-traumatic stress disorder, adjustment disorder, and obesity were severe impairments. *Id.* At step three, the ALJ found that none of Mr. Gurule's impairments, alone or in combination, met or medically equaled a Listing. AR 21–22. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Gurule's RFC. AR 23–27. The ALJ found Mr. Gurule had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416967(b). The claimant can occasionally stoop, kneel, crouch and balance. He can occasionally climb ramps and stairs; can never crawl, can never climb ladders, ropes, or scaffolds. He should avoid exposure to unprotected heights and hazardous machinery and vibration and extreme cold. The claimant can frequently reach, handle and finger with the right upper extremity. The claimant can perform simple, routine and repetitive work; and can have occasional interaction with supervisors, coworkers, and members of the public. He can understand and communicate simple information. He can make simple work-related decisions in a workplace with few changes in the routine work setting; and he can remain on task for two hours at a time. The claimant can perform work that requires no more than occasional ambulation.

AR 23.

At step four, the ALJ concluded that Mr. Gurule was not capable of performing any of his past relevant work. AR 27–28. At step five, the ALJ found that Mr. Gurule was able to perform

4

work that existed in sufficient numbers in the national economy, including work as a collator operator, routing clerk, marker, cutter and paster, surveillance system monitor, or touch up screener. AR 28–29. The ALJ thus found Mr. Gurule not disabled at step five. AR 29.

Mr. Gurule requested that the Appeals Council review the ALJ's unfavorable decision. AR 409–10. On November 20, 2021, the Appeals Council denied the request for review. AR 1. Mr. Gurule timely filed his appeal to this Court on January 27, 2022. Doc. 1.[5]

### IV.  Mr. Gurule's Claims

Mr. Gurule argues that this case should be reversed and remanded because ALJ Richter's Residual Function Capacity ("RFC") finding is contrary to evidence and the law, for the following reasons:

1. The ALJ improperly assessed the opinion of consultative examiner Dr. Robert Krueger, Ph.D., *see* Doc. 25 at 5–11;
2. The ALJ improperly analyzed the opinion of Erick Struck, LISW, *see id.* at 11–16;
3. The ALJ failed to consider lay evidence from Mr. Gurule's uncle and mother, *see id.* at 16–19; and
4. The ALJ erred in her assessment of Mr. Gurule's subjective symptoms, *see id.* at 19–22.

I find that the ALJ's assessment of Dr. Krueger's opinion is not supported by substantial evidence and therefore will not address the other issues raised by Mr. Gurule because they may be affected by the Commissioner's treatment of this case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[5] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 1–3.

V.        Analysis

      **a. ALJ Richter's rejection of marked limitations recommended in Dr. Kreuger's opinion is not supported by substantial evidence.**

At the request of Disability Determination Services, Mr. Gurule participated in a psychological consultative evaluation, including IQ testing, performed by Dr. Robert Krueger, Ph.D. *See* AR 894–902. In his report, Dr. Krueger found that Mr. Gurule "is markedly impaired with visual motor processing speed and would be expected to have marked impairment with maintaining pace and persistence," and "is markedly impaired with adjusting to changes in a work environment." AR 900. In her decision, ALJ Richter "considered and found mildly persuasive" Dr. Krueger's opinion. AR 27. She rejected each marked limitation, instead finding moderate limitations in these domains, in keeping with the opinions of the non-examining State agency psychological consultants.[6] AR 22, 27. These moderate limitations are reflected in the RFC.

      Mr. Gurule argues that the ALJ improperly assessed the opinion of consultative examiner Dr. Robert Krueger, Ph.D., because she "fail[ed] to discuss the actual evidence she cho[se] to rely on in disregarding the moderate and marked limitations assessed by Dr. Krueger and also fail[ed] to discuss the evidence she use[d] to support her determination of inconsistency in Dr. Krueger's opinion." Doc. 25 at 6. In response, the Commissioner argues that the ALJ "explained that she did not find Dr. Krueger's conclusion of marked limitations . . . to be consistent with the other medical evidence of record, [Mr. Gurule's] daily activities, and his ability to complete IQ testing," and discussed the medical evidence in more depth earlier in the decision. Doc. 28 at 10–

---

[6] In the absence of a "legally sufficient explanation" to the contrary, it is error to accord more weight to "the opinion of an agency physician who has never seen the claimant" than to the opinion of an examining physician. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

11. Because the discussion of medical evidence, including the discussion earlier in the decision, does not specifically address the marked limitations rejected by ALJ Richter, and because the ALJ dismissed those limitations in part based on a mischaracterization of Mr. Gurule's daily activities, I find that the RFC is not supported by substantial evidence.

The relevant portion of ALJ's Richter's assessment of Dr. Krueger's opinion is as follows:

> I have considered and found mildly persuasive the opinion of psychologist and consultative examiner, Robert Krueger, Ph.D., on October 8, 2019 (Exhibit 17F). I do not find marked limitations in concentration, persistence or pace and adjustment to be consistent with the other medical evidence of record or [Mr. Gurule's] activities of daily living, including driving, caring for his child, playing games and reports of household chores all day (Exhibit 14F/13), and prepping and cooking (Exhibit 23F/6).

AR 27. This assessment provides no discussion of the medical record that is "sufficiently specific to enable this court to meaningfully review [the ALJ's] findings." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). An undifferentiated reference to "other medical evidence of record" is insufficient.

The Commissioner argues that discussion of Dr. Krueger's opinion earlier in the ALJ's RFC analysis provides substantial evidence for the rejection of these marked limitations. *See* Doc. 28 at 10–11. The cited discussion reads:

> Consultative examiner, Dr. Krueger [sic] noted the claimant qualified for having a mild neurocognitive disorder due to TBI because of his markedly impaired visual motor processing speed (Exhibit 17F/6). Subsequent psychological evaluations and mental status examinations demonstrated not greater than moderate degrees of impairment (Exhibits 23F/3-17; 25F/2, 11).

AR 25. Here, the ALJ cites examinations conducted by certified physician's assistant Laura McCutcheon between October 30, 2019, and August 6, 2020, *see* AR 936–50 (Exhibit 23F/3–17), and by J.M. Mash, Ph.D., on August 10, 2020, and November 9, 2020, *see* AR 973–74

7

(Exhibit 25F/1–2), 981–83 (Exhibit 25F/9–11). These records generally reveal that Mr. Gurule has, through consistent and sometimes intensive medical treatment, improved in the years following his motorcycle accident[7] but continues to struggle with physical and mental limitations. They do not contain any reference to evaluations of his visual processing speed, despite the ALJ's citation on this issue, and contain at most tangential hints as to the level of Mr. Gurule's limitations in "concentration, persistence or pace and adjustment." AR 27. These citations do not support ALJ Richter's rejection of these marked limitations.

The ALJ also based her rejection of marked limitations on Mr. Gurule's daily activities, "including driving, caring for his child, playing games and reports of household chores all day (Exhibit 14F/13 [AR 859]), and prepping and cooking (Exhibit 23F/6 [AR 939])."[8] *Id.* This characterization of Mr. Gurule's daily activity is inconsistent with the record as a whole and fails to discuss "uncontroverted evidence [the ALJ] chooses not to rely upon [or] significantly probative evidence [she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

The relevant portions of the cited exhibits read:

> [Mr. Gurule d]enies anhedonia, has no prob[lem] motivating in the am and in fact gets up and is busy around 6 am. Rep[orts] that he stays busy all day, and doesn['t] feel like he dwells in his thoughts. Does household chores throughout the day: laundry, makes beds, dishes, etc.

AR 859; and:

> [Mr. Gurule's] sister suggested maybe he had "pushed himself too hard" last week, as [he] did a lot of prep and cooking for a gathering his family was having

---

[7] Mr. Gurule was involved in a serious motorcycle accident in September 2018, which caused him to be paralyzed on his right side for a time and still affects the functioning of his right arm and hand and his cognitive functioning. *See* AR 19–22.

[8] ALJ Richter's decision also contains a similar, more extensive mischaracterization of Mr. Gurule's daily activities at AR 25. Most notably, on this page the ALJ states that Mr. Gurule's mother "testified he was working fixing motorcycles," a statement with no basis in the record. This mischaracterization, which is found in the ALJ's symptom analysis, suggests that the ALJ may need to reexamine parts of her decision beyond her treatment of Dr. Krueger's opinion.

and this may be why his jaw is hurting.

AR 939. Taken at face value, it is questionable that these citations provide substantial evidence that Mr. Gurule does not have the marked limitations assessed by Dr. Krueger. They reveal that Mr. Gurule performs minor household tasks each day and has, on one occasion, performed what was for him "a lot of prep and cooking." This is no more than "a mere scintilla of evidence" regarding his ability to sustain concentration and pace during a forty-hour work week. *Langley*, 373 F.3d at 1118.

The testimony by Mr. Gurule and his relatives instead shows that Mr. Gurule's "activities are more consistent with his claims of significant . . . limitation than with the ALJ's conclusion that he is capable of full-time work . . . . [S]poradic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." *Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011) (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir.1993)) (quotation marks omitted). Though Mr. Gurule can drive for short distances in the small town where he lives, he "usually avoid[s] it." AR 48, 310, 324. He cares for his daughter by "instruct[ing] her to dress, wash herself, [and] mak[ing] sure she eats," AR 308, but requires his mother's help in taking care of his daughter and himself, AR 54, 308, 321, and is also cared for *by* his daughter, who helps him tie his shoes and make his bed. AR 47, 52, 57, 307.

To Mr. Gurule's recollection, the food prep that he performed for a family gathering was limited to washing vegetables, AR 49–50; he "tries to stay away from cooking" and "can't use [a] knife for cutting," though he can make sandwiches and other simple meals for himself, AR 56, 307–09, 323. Mr. Gurule does perform chores, but "basically ha[s] to have a guide to remind [him]" of things that he needs to do—his mother leaves him a list each day—and may get confused when, for example, putting away groceries. AR 54, 57, 307, 309, 397. He helps with a limited range of chores: emptying the trash, separating laundry, loading the dishwasher "slowly,"

9

watering the plants, and driving a riding lawn mower. AR 309, 314. His mother leaves him these kinds of "little tasks to do" because she doesn't "want him to stay idle"; however, he needs help and encouragement to complete these tasks. AR 323, 328–29. His attention span is limited to 20 or 30 minutes, even when watching TV, AR 51–52, 55, 325, and his grandfather and uncle check in on Mr. Gurule during the day, AR 393, 397.

"If [Mr. Gurule's] statements are properly considered, it becomes clear that [he can] perform only minimal daily activities that in no way suggest[] any ability to engage in full-time work on a sustained basis." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 101 (4th Cir. 2020). Significant evidence in the record, including the testimony summarized above and Dr. Krueger's clinical findings, suggests that Mr. Gurule has marked limitations; that is, limitations that "seriously limit [his] ability to function independently, appropriately, and effectively on a sustained basis, and complete work-related mental activities." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 11.00(G)(2)(b). Indeed, the vocational expert ("VE") testified that if a person "was unable to remain on task for two hours," the person "would lose their job in short order." AR 73. An individual who required frequent reminders to stay on task also would be "remove[d] from competitive labor." *Id.* The VE also testified that a person performing at 50% of the work speed of a normal employee would not be employable. AR 75. Thus, the ALJ's rejection of the marked limitations found by Dr. Krueger were critical to her determination that Mr. Gurule was not disabled.

In rejecting the marked limitations found by Dr. Krueger, ALJ's Richter discusses neither substantial evidence that would support this decision nor "significantly probative evidence [she] rejects." *Clifton*, 79 F.3d at 1010. I remand so that the ALJ may reconsider these limitations. On remand, the ALJ should "keep in mind that 'sporadic performance of household tasks or work

does not establish that a person is capable of engaging in substantial gainful activity.'" *Krauser*, 638 F.3d at 1333 (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir.1993)). Mr. Gurule "should not be penalized for attempting to lead [a] normal li[fe] in the face of [his] limitations." *Arakas*, 983 F.3d at 101 (citation omitted). Further, "the critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she [or he] would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

### VI. Conclusion

The ALJ erred by rejecting marked limitations recommended in Dr. Krueger's opinion without substantial evidence. The Court remands so that the ALJ can reconsider these limitations and the resulting RFC. The Court does not reach Mr. Gurule's other claimed errors, as these "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 25) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent